567 So.2d 234 (1990)
Seldon A. BRYANT a/k/a Butch Bryant
v.
STATE of Mississippi.
No. 07-KA-59141.
Supreme Court of Mississippi.
September 19, 1990.
Fielding L. Wright, Jr., James L. Farrior, III, Pascagoula, for appellant.
Mike C. Moore, Atty. Gen., Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
*235 Before HAWKINS, P.J., and ANDERSON and PITTMAN, JJ.
HAWKINS, Presiding Justice, for the Court:
Seldon A. Bryant, also known as Butch Bryant, was convicted of child desertion of his daughter in the circuit court of Jackson County and sentenced to serve two years imprisonment.[1] He challenges the sufficiency of the evidence, the fact that the jury saw his grievously afflicted child, the constitutionality of the child desertion statute, Miss. Code Ann. § 97-5-3, and the competency of testimony of the physician describing the child's condition. We are unpersuaded by any of his assignments of error and affirm.

FACTS
In this State a parent commits a felony who deserts or wilfully neglects to provide for the support of his or her child, when the child is in destitute or necessitous circumstances. Miss. Code Ann. § 97-5-3.[2] On July 12, 1985, the grand jury of Jackson County indicted Bryant for such desertion and neglect of Shannon Cecile Bryant, his daughter, born August 3, 1969. The indictment charged the offense as having been committed between July 4, 1982,[3] and July 11, 1985.
Sandra Bryant Dale (Sandra) and Bryant were married August 20, 1963, in Marshall, Texas. Two children were born of their marriage, namely: Blair, born October 7, 1966, and Shannon, born August 3, 1969.
While they were living in Shreveport, Louisiana, Bryant filed for divorce in Texas, and a divorce decree was rendered December 30, 1969, ordering him to pay $150.00 per month child support. Bryant remarried the day of his divorce. Bryant told Sandra that he would pay child support so long as she was single, but if she remarried he would discontinue paying. She remarried Donald Connely Dale in August, 1971, and Bryant stopped child support payments.
Shannon had grievous ailments from birth. She was born premature, following which she and her mother were hospitalized a month. Shannon was deaf and retarded. When she was 17 months old, she was diagnosed with encephalitis. After that she had epileptic seizures. When she was four she developed asthma, and suffered from that for several years. In 1981 she developed lupus eryhthematosis. Matthew F. Kuluz, M.D., a pediatrician who had been her treating physician since she was three, testified she had been hospitalized at least a dozen times, and he had seen her as a patient at least 200 times. Over the years she had been seen and treated by specialists in allergies, pulmonary diseases, neurology and immunology. Her medical expenses ran into thousands of dollars. In 1984 or 1985 Sandra was finally successful in obtaining supplemental security income (SSI) from the Social Security Administration of $340 a month.
It was necessary that Sandra remain at home to care for Shannon. Dale and Sandra separated in 1983 and Sandra tried to work at a hospital, but could not hold a job and care for the child. For a period of time they had no hot water. She and Dale resumed living together in 1985.
Bryant's defense at trial was first, that he did not know where Sandra lived, and second, that she refused to accept any support *236 from him, all of which was denied by Sandra and her husband Dale.

LAW

I. SUFFICIENCY OF EVIDENCE
Addressing first the contention that the evidence was insufficient to support the verdict, we find this totally without merit. As to his defense at trial, the jury obviously did not believe that Bryant was unable to locate his wife or child, and we find no credible evidence of any conscientious effort on the part of Bryant to pay any child support following 1971. As to her "refusal" to accept any support, upon at least three occasions Sandra initiated court proceedings, either by contempt in the Texas court, or by proceeding in Mississippi courts under the Uniform Reciprocal Enforcement of Support Act (URESA) to get some support out of him. She dropped one suit from fear of retaliation, and the other two, through no fault of Sandra, were not successful. His contention that his child was not shown to be in "extreme want or without the means of securing the reasonable actual necessities of life" (Appellant's Brief, p. 21) is likewise specious. Archer v. State, 214 Miss. 742, 59 So.2d 339 (1952). We have not detailed the hardship and difficulties encountered by Sandra in attempting to care for this afflicted child, when there was limited insurance for her.
Bryant, on the other hand, held a good job, had a home worth over $100,000, and other real estate. The jury was amply warranted from the evidence in this case in concluding Bryant wilfully neglected to provide any support for Shannon when she was in destitute and necessitous circumstances. Kelley v. State, 218 Miss. 459, 67 So.2d 459, 44 A.L.R.2d 881 (1953).

II. UNDUE PREJUDICE FROM JURY SEEING SHANNON
Just prior to trial the circuit judge sustained a defense motion that Shannon not be exhibited to the jury because her affliction might cause undue prejudice against Bryant. At the conclusion of the trial, Shannon was seen by the jury in the corridors of the courthouse. Defense counsel called this to the court's attention and objected, and the court overruled a motion for a mistrial. Bryant seeks reversal because the jury did in fact see Shannon.
It would not have been error for the court to permit the jury to see Shannon. This was clearly relevant to the State's case in proving this child's helpless condition and her dire need of financial support. Out of an abundance of caution the circuit judge excluded her from the courtroom. The State made no effort to make a prominent display of Shannon before the jury and there was no error committed by the jury simply seeing the child.

III. IS MISS. CODE ANN. § 97-5-3 UNCONSTITUTIONAL?
Bryant next complains that Miss. Code Ann. § 97-5-3 is an unconstitutional infringement upon the chancery court jurisdiction, and is imprisonment for debt. This issue has now been firmly settled by decisions of this Court adverse to Bryant's contention. This State has a legitimate interest in criminally prosecuting financially able parents who wilfully desert or fail to support their children when in destitute or necessitous circumstances. Martin v. State, 308 So.2d 925, 926 (Miss. 1975); Kelley v. State, supra; Williams v. State, 207 Miss. 816, 43 So.2d 389 (1949).

IV. TESTIMONY OF DR. KULUZ
Bryant finally argues that the court should not have received the testimony from Dr. Kuluz of Shannon's condition. He fails to detect the relevancy of such testimony. Dr. Kuluz's testimony was pertinent and relevant in demonstrating both the extreme and necessitous needs of this unfortunate child, and the indifference of Bryant. Just as it was relevant for the jury to see Shannon, it was relevant for Dr. Kuluz to describe her condition.
We find no error and affirm.
AFFIRMED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] The commitment order likewise requires Bryant to make restitution to the victim in the amount of $28,500.
[2] 97-5-3. Desertion or non-support of child under age sixteen.
Any parent who shall desert or wilfully neglect or refuse to provide for the support and maintenance of his or her child or children, ... while said child or children are under the age of sixteen (16) years, leaving such child or children in destitute or necessitous circumstances, shall be guilty of a felony and, on conviction thereof, shall be punished by a fine or not less than twenty-five dollars ($25.00), nor more than five hundred dollars ($500.00), or by imprisonment in the penitentiary nor exceeding two (2) years, or both, in the discretion of the court.
[3] The indictment was amended November 30, 1987, to read, "... on and between the 4th day of July, 1972, and the 11th day of July, in the ..." [Emphasis added]